**Ex Parte John Christopher LO.**

**No. PD–1560–12.**

Court of Criminal Appeals of Texas.

Oct. 30, 2013.

Opinion on Denial of Rehearing
March 19, 2014.

12

Mark Bennett, Bennett & Bennett, Houston, TX, for Appellant.

Jessica Akins, Assistant District Attorney, Houston, TX, Lisa C. McMinn, State's Attorney, Austin, for The State.

## OPINION

COCHRAN, J., delivered the opinion of the unanimous Court.

Appellant was charged with the third degree felony of communicating in a sexually explicit manner with a person whom he believed to be a minor with an intent to arouse or gratify his sexual desire.[1] He

---

1. Tex. Penal Code § 33.021(b)(1). The indict- ment in this case read, in pertinent part, that

filed a pretrial application for a writ of habeas corpus alleging that this specific subsection of the felony offense of online solicitation of a minor is facially unconstitutional[2] for three distinct reasons: (1) it is overbroad and criminalizes a wide range of speech protected by the First Amendment; (2) it is vague because the term "sexually explicit" communications that "relate to" sexual conduct chills the exercise of free-speech by causing citizens to steer wide of the uncertain boundaries between permitted and prohibited speech; and (3) it violates the Dormant Commerce Clause. The trial judge denied relief, and the court of appeals affirmed.[3] We granted discretionary review to determine, as a matter of first impression,[4] whether Section 33.021(b)—the "sexually explicit communications" provision—is facially unconstitutional.[5]

Because the court of appeals used the wrong standard of review for addressing

constitutional challenges to a penal statute that restricts speech based on its content, it reached the wrong conclusion. Applying the constitutionally required presumption that "content-based regulations [of speech] are presumptively invalid"[6] and subject to strict scrutiny,[7] we conclude that Section 33.021(b) of the Texas Penal Code is overbroad because it prohibits a wide array of constitutionally protected speech and is not narrowly drawn to achieve only the legitimate objective of protecting children from sexual abuse. We need not, therefore, address whether the provision is also unconstitutionally vague or violates the Dormant Commerce Clause.

## I.

### A. The Standard of Review

▇▇▇ Whether a statute is facially constitutional is a question of law that we review *de novo*.[8] When the constitutionali-

---

"on October 31st, 2009, the defendant did then and there unlawfully with the intent to arouse and gratify the sexual desire of the defendant, intentionally communicate in a sexually explicit manner with [the complainant], an individual whom the defendant believed to be younger than 17 years of age, by text message and that the defendant was at that time more than 17 years of age."

2. Because appellant makes a facial challenge to Section 33.021(b), the specific facts of his case are irrelevant. It is only when a person makes an "applied challenge" that the facts of the case matter.

3. *Lo v. State*, 393 S.W.3d 290 (Tex.App.-Houston [1st Dist.] 2011).

4. *See* Tex.R.App. P. 66.3(b) (one reason for granting review is to decide "whether a court of appeals has decided an important question of state or federal law that has not been, but should be, settled by the Court of Criminal Appeals").

5. Appellant's sole ground for review reads, "The First Court of Appeals erred when it

held that section 33.021 of the Texas Penal Code, the Online Solicitation of a Minor statute, is constitutional."

6. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992).

7. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000) ("a content-based speech restriction" may stand "only if it satisfies strict scrutiny").

8. *See Lawrence v. State*, 240 S.W.3d 912, 915 (Tex.Crim.App.2007) (*de novo* review of ruling on motion to quash indictment based on claim that statute was facially unconstitutional); *Byrne v. State*, 358 S.W.3d 745, 748 (Tex. App.-San Antonio 2011, no pet.) ("Questions concerning the constitutionality of a criminal statute are likewise reviewed de novo."); *Lawson v. State*, 283 S.W.3d 438, 440 (Tex. App.-Fort Worth 2009, pet. ref'd); *State v. Salinas*, 982 S.W.2d 9, 10–11 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd); *see also United States v. Snarr*, 704 F.3d 368, 398 (5th Cir.2013) ("Constitutional challenges to federal statutes are reviewed de novo.").

ty of a statute is attacked, we usually begin with the presumption that the statute is valid and that the legislature has not acted unreasonably or arbitrarily.[9] The burden normally rests upon the person challenging the statute to establish its unconstitutionality.[10] However, when the government seeks to restrict and punish speech based on its content, the usual presumption of constitutionality is reversed.[11] Content-based regulations (those laws that distinguish favored from disfavored speech based on the ideas expressed)[12] are presumptively invalid, and the government bears the burden to rebut that presump-

tion.[13] The Supreme Court applies the "most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content."[14]

To satisfy strict scrutiny, a law that regulates speech must be (1) necessary to serve a (2) compelling state interest and (3) narrowly drawn.[15] A law is narrowly drawn if it employs the least restrictive means to achieve its goal and if there is a close nexus between the government's compelling interest and the restriction.[16] If a less restrictive means of meet-

9. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim.App.2002).

10. *Id.*

11. *Playboy*, 529 U.S. at 817, 120 S.Ct. 1878 ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."); *see Ex parte Nyabwa*, 366 S.W.3d 719, 724 (Tex.App.-Houston [14th Dist.] 2011, pet. ref'd) (citing *Playboy* in stating, "when the government seeks to restrict speech based on its content, the usual presumption of constitutionality afforded legislative enactments is reversed.").

12. *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 643, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). If it is necessary to look at the content of the speech in question to decide if the speaker violated the law, then the regulation is content-based. *Gresham v. Peterson*, 225 F.3d 899, 905 (7th Cir.2000). For example, if a statute makes it a crime for an adult to communicate with a minor via the internet, that is a content-neutral law. But if the statute prohibits an adult from communicating with a minor in a sexually explicit manner, that is a content-based law because one has to look at the content of the communication to decide if the speaker violated the law.

13. *Ashcroft v. ACLU*, 542 U.S. 656, 660, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004) (*Ashcroft II*) ("Content-based prohibitions, enforced by severe criminal penalties, have the constant potential to be a repressive force in the lives and thoughts of a free people. To guard against that threat the Constitution demands

that content-based restrictions on speech be presumed invalid, and that the Government bear the burden of showing their constitutionality.") (citation omitted).

14. *Turner Broadcasting*, 512 U.S. at 642, 114 S.Ct. 2445.

15. *Sable Communications of California, Inc. v. FCC*, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989). In *Sable*, the Supreme Court explained,

The Government may ... regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest. We have recognized that there is a compelling interest in protecting the physical and psychological well-being of minors. This interest extends to shielding minors from the influence of literature that is not obscene by adult standards. The Government may serve this legitimate interest, but to withstand constitutional scrutiny, "it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms." It is not enough to show that the Government's ends are compelling; the means must be carefully tailored to achieve those ends.

*Id.* (citations omitted).

16. *See Denver Area Educational Telecommunications Consortium, Inc. v. F.C.C.*, 518 U.S. 727, 755–56, 116 S.Ct. 2374, 135 L.Ed.2d 888 (1996). According to the Supreme Court in *Ashcroft II*,

ing the compelling interest could be at least as effective in achieving the legitimate purpose that the statute was enacted to serve, then the law in question does not satisfy strict scrutiny.[17] Furthermore, when the content of speech is the crime, scrutiny is strict because, "as a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."[18]

In this case, the court of appeals mistakenly applied the usual standard of review, including the presumption of the statute's validity,[19] instead of the presumption-of-*invalidity* standard of review for First Amendment, content-based statutes.

First, we examine what the statute prohibits and what is its expressed legislative purpose.

> The purpose of the [least restrictive means] test is to ensure that speech is restricted no further than necessary to achieve the goal, for it is important to assure that legitimate speech is not chilled or punished. For that reason, the test does not begin with the status quo of existing regulations, then ask whether the challenged restriction has some additional ability to achieve Congress' legitimate interest. Any restriction on speech could be justified under that analysis. Instead, the court should ask whether the challenged regulation is the least restrictive means among available, effective alternatives.

*Ashcroft II*, 542 U.S. at 666, 124 S.Ct. 2783.

**17.** *See Reno v. A.C.L.U.*, 521 U.S. 844, 874, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997).

**18.** *Ashcroft v. A.C.L.U.*, 535 U.S. 564, 573, 122 S.Ct. 1700, 152 L.Ed.2d 771 (2002) (*Ashcroft I* ) (quotation marks omitted).

**19.** *Lo*, 393 S.W.3d at 292–93 ("When presented with a challenge to the constitutionality of a statute, we presume that the statute is valid and the legislature has not acted unreasonably or arbitrarily. The party challenging the statute carries the burden to establish its unconstitutionality.") (citation omitted).

**20.** Tex. Penal Code § 33.021(c). That provision reads,

## B. Section 33.021 of the Texas Penal Code

### 1. Section 33.021(c): Solicitation of a Minor.

Section 33.021 of the Texas Penal Code is titled "Online Solicitation of a Minor." It includes subsection (c)—a provision that prohibits and punishes an actor who uses electronic communications to "solicit" a minor, "to meet another person, including the actor, with the intent that the minor will engage in" certain sexual behavior.[20] Such solicitation statutes exist in virtually all states and have been routinely upheld as constitutional because "offers to engage in illegal transactions [such as sexual assault of a minor] are categorically excluded from First Amendment protection."[21] Thus, it

> A person commits an offense if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

**21.** *United States v. Williams*, 553 U.S. 285, 297, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008); *see, e.g., United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir.2004) ("Speech attempting to arrange the sexual abuse of children is no more constitutionally protected than speech attempting to arrange any other type of crime."); *United States v. Dhingra*, 371 F.3d 557, 559 (9th Cir.2004) (federal statute prohibiting online solicitation of a minor is not facially overbroad or vague; statute regulates conduct, not speech—" 'no otherwise legitimate speech is jeopardized by [the federal statute] because the statute only criminalizes conduct, i.e., the targeted inducement of minors for illegal sexual activity'—and that 'speech is merely the vehicle through which a pedophile ensnares the victim.' "); *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir.2000) (statute proscribing knowing efforts to persuade minors to en-

is the *conduct* of requesting a minor to engage in illegal sexual acts that is the gravamen of the offense. The First Court of Appeals previously upheld the constitutionality of the Texas online-solicitation-of-minors statute.[22] That specific provision is not at issue in this case, but it provides an excellent contrast to the provision that is at issue.

### 2. Section 33.021(b): Sexually Explicit Communications.

█ Article 33.021 contains a separate, very different, subsection (b), that prohibits and punishes speech based on its content.[23] That subsection prohibits a person from communicating online in a "sexually explicit" manner with a minor if the person has the intent to arouse and gratify anyone's sexual desire. According to the statute, " '[s]exually explicit' means any communication, language, or material, in-

gage in illegal sexual activity did not violate First Amendment); *State v. Snyder*, 155 Ohio App.3d 453, 801 N.E.2d 876, 883 (2003) (statute prohibiting adults from using telecommunications device to solicit minor for sexual activity is not "aimed at the expression of ideas or beliefs, rather it is aimed at prohibiting adults from taking advantage of minors and the anonymity and ease of communicating through telecommunications devices, especially the Internet and instant messaging devices, by soliciting minors to engage in sexual activity"); *see generally* 15B Am. Jur.2d *Computers and the Internet* § 16 (2013) ("Solicitation of Children for Sex Acts").

22. *Maloney v. State*, 294 S.W.3d 613, 625–29 (Tex.App.-Houston [1st Dist.] 2009, pet. ref'd) (rejecting defendant's overbreadth and vagueness challenges to online-solicitation-of-minor statute set out in section 33.021(c)).

23. Section 33.021(b) states:
A person who is 17 years of age or older commits an offense if, with the intent to arouse or gratify the sexual desire of any person, the person, over the Internet, by electronic mail or text message or other electronic message service or system, or

cluding a photographic or video image, that relates to or describes sexual conduct."[24] The statute bars explicit descriptions of sexual acts, but it also bars any electronic communication or distribution of material that "relates to" sexual conduct. That bar would encompass many modern movies, television shows, and "young adult" books, as well as outright obscenity, material harmful to a minor, and child pornography.

### 3. The Legislative Purpose of Section 33.021.

█ The online-solicitation statute was enacted in 2005. As the State notes,[25] the legislative purpose of that provision was to "allow for the filing of charges against individuals who engage in conversations over the Internet with the intent of meeting the child for sexual activity before any physical contact takes place."[26]

through a commercial online service, intentionally:
(1) communicates in a sexually explicit manner with a minor; or
(2) distributes sexually explicit material to a minor.
TEX. PENAL CODE § 33.021(b).

24. TEX. PENAL CODE § 33.021(a)(3). " 'Sexual conduct' means sexual contact, actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola." *Id.* § 43.25(a)(2).

25. State's Post–Submission Brief at 4 (noting that "[t]his statute was enacted to allow law enforcement to stop a predator before [he has] the opportunity to meet or injure the child.").

26. House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. H.B. 2228, 79th Leg., R.S. (2005). During the House Criminal Jurisprudence Committee Hearing on March 22, 2005, Shane Phelps, the First Assistant District Attorney in Brazos County, told a story

It is directed against those who "engage in conversations over the Internet with the intent of meeting a minor for sexual activities."[27] But subsection (c), read in conjunction with subsection (d),[28] covers that "luring" scenario. Subsection (b) punishes, as a third-degree felony, salacious speech over the internet (but not "dirty talk" spoken face-to-face) and the distribution of sexually explicit· materials over the internet (but not the distribution of those same materials hand-to-hand) to a minor as long as the actor has the intent to arouse or gratify anyone's sexual desires. It does not require that the actor ever have any intent to meet the minor for any reason. We turn now to the First Amendment.

## II.

### A. The First Amendment Overbreadth Doctrine

■■■■ According to the First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a "substantial" amount of protected speech "judged in relation to the statute's plainly legitimate sweep."[29] The State may not justify restrictions on constitutionally *protected* speech on the basis that such restrictions are necessary to effectively suppress constitutionally *unprotected* speech, such as obscenity, child pornography, or the solicitation of minors.[30] "The Government may not suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter. The Constitution requires the reverse."[31] This rule reflects the judgment that "[t]he possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted[.]"[32]

■■ Thus, in *Ashcroft v. Free Speech Coalition*, the Supreme Court rejected the government's argument that a statute criminalizing the distribution of constitutionally protected "virtual" child pornography[33] was necessary to further the state's interest in prosecuting the dissemination

about a "perpetrator" who entered a chat room and began an online relationship with a 13 year-old girl. After several chat sessions, the "perpetrator" drove to the victim's town and attempted to set up a meeting. Mr. Phelps stated that, unless the perpetrator actually met with the child, he could not charge the "perpetrator" with solicitation. At the Senate Criminal Justice Committee Hearing on May 19, 2005, Senator Seliger introduced the bill and said that its passage was necessary so that "perpetrators" could be charged with solicitation before they actually met the child. He also mentioned that thirty-four other states criminalize child "luring" or solicitation.

27. Senate Research Center, Bill Analysis, Tex. H.B. 2228, 79th Leg., R.S. (2005).

28. Tex Penal Code § 33.021(d). That provision reads as follows:

It is not a defense to prosecution under Subsection (c) that:

(1) the meeting did not occur;
(2) the actor did not intend for the meeting to occur; or
(3) the actor was engaged in a fantasy at the time of commission of the offense.
Refer to note 20 *supra* for the text of Subsection (c).

29. *Virginia v. Hicks*, 539 U.S. 113, 118–19, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003).

30. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002).

31. *Id.*

32. *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

33. "Virtual" pornography is produced through computer-imaging technology without the use of real children. *Free Speech Coalition*, 535 U.S. at 241–42, 122 S.Ct. 1389.

of constitutionally unprotected child pornography that used "real" children. The government had argued that "the possibility of producing images by using computer imaging makes it very difficult for [the government] to prosecute those who produce pornography using real children."[34] Thus, according to the government, the protected speech (virtual child pornography) could be banned along with the unprotected speech (real child pornography). The Supreme Court rejected that notion entirely: "The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process."[35] *Free Speech Coalition* tells us that a ban upon constitutionally protected speech may not be upheld on the theory that "law enforcement is hard,"[36] and the State may not punish speech simply because that speech increases the chance that "a pervert" might commit an illegal act "at some indefinite future time."[37]

The State may regulate the content of constitutionally protected speech to promote a "compelling interest," such as the physical and psychological well-being of minors, if it chooses "the least restrictive means" to further that interest.[38] But it is not enough that the governmental ends are compelling, the means to achieve those ends must be narrowly drawn to achieve only those ends.[39]

**B. Section 33.021(b) Is Unconstitutionally Overbroad.**

Although the State has a compelling interest in protecting children from sexual predators, this "explicit sexual communications" provision is not narrowly drawn to achieve that legitimate goal. Indeed, this subsection does not serve any compelling interest that is not already served by a separate, more narrowly drawn, statutory provision. This subsection covers obscene material, but obscene communications and materials are already proscribed by Sections 43.22 and 43.23.[40]

---

34. *Id.* at 254, 122 S.Ct. 1389; *see also Stanley v. Georgia*, 394 U.S. 557, 567–68, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1968) (people have a First Amendment right to possess obscene material, even though the existence of this right makes it more difficult for the states to further their legitimate interest in prosecuting the distribution of obscenity).

35. *Free Speech Coalition*, 535 U.S. at 255, 122 S.Ct. 1389; *see also Lewis v. City of New Orleans*, 415 U.S. 130, 133, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974) (holding statute that prohibited cursing at police or using "obscene or opprobrious" language toward them was overbroad and facially unconstitutional).

36. *Free Speech Coalition*, 535 U.S. at 254, 122 S.Ct. 1389.

37. *See Hess v. Indiana*, 414 U.S. 105, 108, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973) (per curiam) (defendant's statement at an anti-war demonstration that "we'll take the fucking street later (or again)" could not be punished as obscene speech or "fighting words" because it did not incite imminent violence; such speech was constitutionally protected because it merely advocated illegal action at some undefined time in the future).

38. *Sable Communications of California, Inc. v. FCC*, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989) (denial of adult access to sexually explicit, non-obscene "Dial-a-Porn" far exceeded what was necessary to limit minors' access to such messages).

39. *Id.* ("The Government may serve this legitimate interest, but to withstand constitutional scrutiny, 'it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms.' ").

40. Tex. Penal Code §§ 43.22, 43.23. Under Section 43.21(a)(1),

"Obscene" means material or a performance that:
(A) the average person, applying contemporary community standards, would find

This subsection covers material harmful to a minor, but that material is already proscribed by Section 43.24.[41] This subsection covers child pornography, but that material is already proscribed by Section 43.26.[42] The only material that this subsection covers that is not already covered by another penal statute is otherwise constitutionally protected speech. "Sexual expression which is indecent but not obscene is protected by the First Amendment."[43] Subsection (b) covers a whole cornucopia of "titillating talk" or "dirty talk." But it also includes sexually explicit literature such as "Lolita,"[44] "50 Shades of Grey,"[45] "Lady Chatterley's Lover,"[46] and Shakespeare's "Troilus and Cressida." It includes sexually explicit television shows, movies, and performances such as "The Tudors," "Rome," "Eyes Wide Shut," "Basic Instinct," Janet Jackson's "Wardrobe Malfunction" during the 2004 Super Bowl, and Miley Cyrus's "twerking" during the 2013 MTV Video Music Awards. It includes sexually explicit art such as "The Rape of the Sabine Women," "Venus De Milo," "the Naked Maja," or Japanese Shunga. Communications and materials that, in some manner, "relate to" sexual conduct comprise much of the art, literature, and entertainment of the world from the time of the Greek myths extolling Zeus's sexual prowess, through the ribald plays of the Renaissance, to today's Hollywood movies and cable TV shows.

In sum, *everything* that Section 33.021(b) prohibits and punishes is speech and is either already prohibited by other statutes (such as obscenity, distributing harmful material to minors, solicitation of a minor, or child pornography) or is constitutionally protected.

1. *The State Has a Compelling Interest in Preventing Child Abuse, but Section 33.021(b) Is Not Narrowly Drawn.*

"The prevention of sexual exploitation and abuse of children constitutes a govern-

that taken as a whole appeals to the prurient interest in sex;
(B) depicts or describes:
(i) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, sodomy, and sexual bestiality; or
(ii) patently offensive representations or descriptions of masturbation, excretory functions, sadism, masochism, lewd exhibition of the genitals, the male or female genitals in a state of sexual stimulation or arousal, covered male genitals in a discernibly turgid state or a device designed and marketed as useful primarily for stimulation of the human genital organs; and
(C) taken as a whole, lacks serious literary, artistic, political, and scientific value.

41. *Id.* § 43.24. Under this statute, material that is harmful or obscene as to minors appeals to their prurient interest in sex, nudity, or excretion. *Id.* § 43.24(a)(2)(A). Such material must also be patently offensive and utterly without redeeming social value for minors. *Id.* § 43.24(a)(2)(B) & (C). *See generally Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 498–99, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985) (noting that descriptions and discussions of normal sexual interests are not prurient; the First Amendment protects "material that, taken as a whole, does no more than arouse, 'good, old fashioned, healthy' interest in sex.").

42. *Id.* § 43.26.

43. *Sable Communications of California, Inc.,* 492 U.S. at 126, 109 S.Ct. 2829; *Roth v. United States,* 354 U.S. 476, 487, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) ("[S]ex and obscenity are not synonymous.").

44. Vladimir Nabokov, Lolita (Weidenfeld & Nicolson 1959).

45. E.L. James, 50 Shades of Grey (Vintage 2012).

46. D.H. Lawrence, Lady Chatterley's Lover (Grove Press 1959).

ment objective of surpassing importance."[47] There is no question that the State has a right-indeed a solemn duty—to protect young children from the harm that would be inflicted upon them by sexual predators. In upholding the constitutionality of Section 33.021(c)—the offense of online solicitation—the First Court of Appeals stated that "[t]he prevention of sexual exploitation and abuse of children addressed by the Texas online solicitation of a minor statute constitutes a government objective of surpassing importance."[48] Indeed it does. The statute prohibits internet communications with a minor that solicit an illegal sex act.[49]

Many states have enacted statutes aimed at preventing the dissemination of "harmful" materials to minors and solicitation of minors over the internet. Courts all across the United States have upheld these statutes. They share either of two characteristics: (1) the definition of the banned communication usually tracks the definition of obscenity as defined by the Supreme Court in *Miller v. California*;[50] or (2) the statutes include a specific intent to commit an illegal sexual act, i.e., the actor intends to "solicit" or "lure" a minor to commit a sexual act. All of the cases cited by the State in its brief deal with such solicitation or dissemination statutes.[51] None of them deal with non-ob-

**47.** *New York v. Ferber*, 458 U.S. 747, 757, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).

**48.** *Maloney v. State*, 294 S.W.3d 613, 627 (Tex.App.-Houston [1st Dist.] 2009, pet. ref'd) (holding that Section 33.021(c) was not unconstitutionally overbroad because it punished speech that solicited the commission of an illegal sexual act with a minor).

**49.** The solicitation-of-a-minor subsection of Section 33.021 reads as follows:

(c) A person commits an offense if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

TEX. PENAL CODE § 33.021(c).

**50.** 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

**51.** *See, e.g., United States v. Tykarsky*, 446 F.3d 458, 472–73 (3d Cir.2006) (upholding constitutionality of federal statute prohibiting actual or attempted persuasion of a minor to engage in illicit sexual activity and traveling for the purpose of engaging in illicit sexual activity); *United States v. Thomas*, 410 F.3d 1235, 1243–44 (10th Cir.2005) (federal solicitation-of-a-minor statute prohibits conduct—the request that a minor commit an illegal sex

act—not merely speech); *United States v. Johnson*, 376 F.3d 689, 694–95 (7th Cir.2004) (federal child-pornography statute is not overbroad because it does not punish constitutionally protected speech); *see also United States v. Bailey*, 228 F.3d 637, 639 (6th Cir.2000) (no overbreadth or ambiguity problems in federal child-solicitation law because statute applies only to those who target minors, and "the Defendant simply does not have a First Amendment right to attempt to persuade minors to engage in illegal sexual acts"); *Podracky v. Commonwealth*, 52 Va.App. 130, 662 S.E.2d 81, 84–85 (2008) (upholding solicitation-of-a-minor statute and quoting the Supreme Court: "Offers to engage in illegal transactions are categorically excluded from First Amendment protection."); *People v. Smith*, 347 Ill.App.3d 446, 282 Ill.Dec. 674, 806 N.E.2d 1262, 1265 (2004) (upholding solicitation-of-a-minor statute); *People v. Hsu*, 82 Cal.App.4th 976, 99 Cal.Rptr.2d 184, 194–96 (2000) (upholding internet solicitation of a minor statute because it required that defendant act "with the intent, or for the purpose of seducing a minor"); *People v. Foley*, 94 N.Y.2d 668, 709 N.Y.S.2d 467, 731 N.E.2d 123, 128–31 (2000) (upholding statute prohibiting the dissemination of indecent material to a minor because (1) the forbidden material was defined as being obscene, and (2) the actor "importunes, invites or induces a minor to engage in" various listed sex acts); *State v. Green*, 397 S.C. 268, 724 S.E.2d 664, 667–69 (2012) (solicitation of a minor statute that required actor to have the "intent of persuad-

scene, non-solicitative, non-child pornographic, non-harmful-to-minors sexually explicit communications to minors.

Most states, like Texas, have also enacted a statute prohibiting the dissemination to children of material that is "harmful" to minors. These statutes, following the Supreme Court decision in *Ginsberg v. New York*,[52] define "harmful" as "material defined to be obscene on the basis of its appeal to [minors] whether or not it would be obscene to adults."[53] Such statutes do not invade "the area of freedom of expression constitutionally secured to minors," merely because the definition of obscenity is geared "to social realities by permitting the appeal of this type of material to be assessed in term[s] of the sexual interest" of minors.[54] Although we have not direct-

ly addressed the issue, the First Court of Appeals upheld the constitutionality of Texas's statute prohibiting the sale of material harmful to minors in *State v. Stone*.[55]

On the other hand, in *Reno v. ACLU*,[56] the Supreme Court struck down as overbroad a portion of the federal Communications Decency Act that prohibited the "knowing" dissemination of "indecent" communications as well as "obscene" communications to children over the internet.[57] As the court explained, "In evaluating the free speech rights of adults, we have made it perfectly clear that '[s]exual expression which is indecent but not obscene is protected by the First Amendment.'"[58] Therefore, the communication of descriptions or other depictions of non-obscene sexual conduct that do not involve live

ing, inducing, enticing, or coercing the [minor] to engage or participate in a sexual activity" was not overbroad or vague because applied only to situations in which the actor intentionally targets a minor for an illegal purpose); *State v. Hatton*, 985 So.2d 709 (La. 2008) (solicitation-of-child statute required communications "for the purpose of or with intent to persuade, induce, entice, or coerce the person to engage or participate in sexual conduct or a crime of violence"); *Hatch v. Superior Court*, 79 Cal.App.4th 663, 94 Cal. Rptr.2d 453 (2000) (upholding dissemination of harmful materials to a minor when that person acts "with the intent or for the purpose of seducing a minor").

**52.** 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968).

**53.** *Id.* at 631, 88 S.Ct. 1274. Penal Code Section 43.24, the Texas statute prohibiting the sale, distribution or display of harmful material to minors, already bans the dissemination of material that is deemed obscene for minors. Section 43.24(a)(2) defines "harmful material."

(2) "Harmful material" means material whose dominant theme taken as a whole:
(A) appeals to the prurient interest of a minor in sex, nudity, or excretion;
(B) is patently offensive to prevailing standards in the adult community as a

whole with respect to what is suitable for minors; and
(C) is utterly without redeeming social value for minors.

TEX. PENAL CODE § 43.24(a)(2).

**54.** *Ginsberg*, 390 U.S. at 637–38, 88 S.Ct. 1274.

**55.** 137 S.W.3d 167, 181–82 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd) (relying on *Ginsberg* in holding that law prohibiting a person from exhibiting to children material deemed to be obscene as to them, although not to adults, was neither overbroad nor vague).

**56.** 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997).

**57.** *Id.* at 860, 117 S.Ct. 2329 (striking down provisions of the Communications Decency Act (CDA) prohibiting internet transmission of "indecent" communications to minors or sending "patently offensive" communications through use of interactive computer service to minors; these provisions, which went beyond prohibiting dissemination of "obscene" materials, were facially overbroad in violation of the First Amendment).

**58.** *Id.* at 874, 117 S.Ct. 2329.

performances or visual reproductions of live performances by children retain First Amendment protections.[59]

*Ginsberg* and *Reno* are bookend cases: The Supreme Court upholds statutes prohibiting the dissemination of material that is defined as "obscene" for children, but it will strike down, as overbroad, statutes that prohibit the communication or dissemination of material that is merely "indecent" or "sexually explicit." New Mexico and Virginia enacted statutes that criminalized the dissemination of non-obscene but sexually explicit material to minors over the internet, but federal courts held those statutes unconstitutionally overbroad under *Reno* because they unconstitutionally burdened otherwise protected speech.[60]

Looking at the present statute, the compelling interest of protecting children from sexual predators is well served by the solicitation-of-a-child prohibition in subsection (c). But subsection (b) does not serve that same compelling purpose. It may protect children from suspected sexual predators before they ever express any intent to commit illegal sexual acts, but it prohibits the dissemination of a vast array of constitutionally protected speech and materials. The State argues that this provision is intended to target "grooming" by predators who develop a relationship with their intended victim by befriending the child online, developing their trust, and then eventually engaging in sexually explicit conversations. We are unable to find anything in the 2005 legislative history to support an intent to criminalize "grooming" by titillating speech. The intent expressed in the bill analyses, the committee hearings, and the floor debate was that the crime of solicitation of a minor on the internet is complete at the time of the internet solicitation, rather than at some later time if and when the actor actually meets the child. Furthermore, the Supreme Court has rejected the notion that allowing the dissemination of "virtual" child pornography would "whet the appetites of pedophiles," and therefore could be banned.[61] We must do the same here.

But even if the Legislature did have an intent to prohibit "grooming" in subsection (b), the culpable mental state prescribed in that provision—"intent to arouse or gratify the sexual desire of any person"—is not narrowly drawn to achieve that end. A more narrowly drawn culpable mental state would be "with intent to induce the child to engage in conduct with the actor or another individual that would constitute a violation of §§ 21.11, 22.011, or 22.021." [62]

---

59. *Ferber,* 458 U.S. at 764–65, 102 S.Ct. 3348.

60. *ACLU v. Johnson,* 194 F.3d 1149, 1158–60 (10th Cir.1999) (law criminalizing internet dissemination of non-obscene, sexually explicit materials to minors was overbroad; distinguishing *Ginsberg* and following *Reno* ); *PSI-Net, Inc. v. Chapman,* 362 F.3d 227, 234–36 (4th Cir.2004) (although prior statute prohibiting sale of material harmful to children had been upheld, amended version that proscribed dissemination of material harmful to children over the internet was overbroad as it would have a chilling effect upon otherwise protected speech; those who communicate in chat rooms or post sexually explicit materials on the internet cannot prevent juveniles from accessing the material).

61. *Free Speech Coalition,* 535 U.S. at 253, 122 S.Ct. 1389.

62. *See People v. Cervi,* 270 Mich.App. 603, 616–17, 620, 717 N.W.2d 356, 364–65, 366–67 (2006) (upholding constitutionality of MCL 750.145d, which provided: "A person shall not use the internet or a computer ... to communicate with any person for the purpose of ... [c]ommitting, attempting to commit, conspiring to commit, or ·soliciting another person to commit conduct proscribed under section ... 520d ... in which the victim or intended victim is a minor or is believed by that person to be a minor"; 520d criminalized conduct in which "the person engages in sexual penetration with another person and ... [t]hat other person is at least 13 years of

The State suggests that, without the current provision, perverts will be free to bombard our children with salacious emails and text messages, and parents and law enforcement would be unable to stop it. But as we have just observed, there are more narrow means of drawing a statute to target the phenomenon of "grooming."

Moreover, section 42.07 of the Penal Code, the harassment law, already prohibits and punishes an electronic communication that "makes a comment, request, suggestion, or proposal that is obscene."[63] Or, if the repeated emails or text messages are not obscene, but they are "reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend" the child, the

sender may be prosecuted under Section 42.07(a)(7).[64]

In sum, we conclude that the statutory provision before us is not narrowly drawn to effectuate a compelling state interest because there are narrower means of achieving the State interests advanced here, at least some of which are already covered by other statutes prohibiting solicitation, obscenity, harassment, or the distribution of harmful material to minors.

### 2. The State's Arguments.

The State argues that the Texas "sexually explicit communications" provision is narrowly drawn because the statute reaches only "sexually explicit materials" and the statute requires that the actor commu-

age and under 16 years of age"; concluding that the statute held the defendant "accountable not for his words, but for the act of communicating with a perceived minor with intent to make her the victim of a crime"); *People v. Keister,* 198 Cal.App.4th 442, 445, 449–50, 129 Cal.Rptr.3d 566, 569, 572 (3 Dist.2011) (upholding constitutionality of CAL.PENAL CODE § 288.3, which provided: "Every person who contacts or communicates with a minor, or attempts to contact or communicate with a minor, who knows or reasonably should know that the person is a minor, with intent to commit an offense specified in Section 207, 209, 261, 264.1, 273a, 286, 288, 288a, 288.2, 289, 311.1, 311.2, 311.4 or 311.11 involving the minor" commits an offense; statute does not unconstitutionally restrict protected speech because the defendant must have an "unlawful sexual intent" that involves "the specific intent to commit an enumerated sex offense"); *Cashatt v. State,* 873 So.2d 430, 433–34, 435 n. 1 (Fla. 1st Dist.2004) (upholding constitutionality of Florida Statutes § 847.0135(3), which provided: "Any person who knowingly utilizes a computer on-line service, Internet service, or local bulletin board service to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice, a child or another person believed by the person to be a child, to commit any illegal act described" in certain sections proscribing sex offenses commits an offense; stating: "We have grave doubts that

the framers of the Constitution, had they the gift of seeing into the future, would have intended that sexually explicit e-mails sent to a minor for the purpose of seducing the minor to engage in illegal sexual acts be protected under the First Amendment, notwithstanding that identical communications to an adult would be protected."). *See also People v. Foley,* 94 N.Y.2d 668, 709 N.Y.S.2d 467, 731 N.E.2d 123 (Ct.App.2000); *State v. Backlund,* 672 N.W.2d 431 (N.D.2003).

63. TEX. PENAL CODE § 42.07(a)(1) ("A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person: (1) initiates communication and in the course of the communication makes a comment, request, suggestion, or proposal that is obscene[.]").

64. TEX. PENAL CODE § 42.07(a)(7) ("A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person: (7) sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another."); *see Scott v. State,* 322 S.W.3d 662, 670–71 (Tex. Crim.App.2010) (upholding harassment statute as a content-neutral restriction on speech because it does not depend on *what* the communication is, only that the defendant's repeated calls are intended to harass the recipient).

nicate those materials with an intent to arouse or gratify someone's sexual desires. Neither of those arguments saves the statute from being unconstitutionally overbroad.

First, the State argues that appellant "has failed to demonstrate how intentional conversations, sexually explicit in nature, with minors constitute protected speech."[65] That is, of course, exactly backwards.[66] Statutes that regulate the content of speech—as this statute most assuredly does—are presumed to be invalid, and it is the State, not appellant, that must establish its validity.[67] The State has not cited a single case from any jurisdiction that has held that sexually explicit speech that is not obscene or "harmful" to minors is outside the protection of the First Amendment as long as the actor has an intent to arouse or gratify sexual desire.[68] And, as noted above, we are unable to find any such case or other state statute. The Supreme Court decisions in *Reno, Ashcroft II,* and *Free Speech Coalition* (none of which did the State discuss or distinguish) appear to contradict .the State's position.

 Second, the State claims that the "explicit sexual communications" law is not overbroad because it "is specifically tailored to battle the widespread use of the Internet and technology as a tool for adults who prey on children, with the specific intent to arouse or gratify a sexual desire."[69] It argues that this law is narrowly tailored by this scienter requirement. But the First Amendment protects thoughts just as it protects speech.[70] As the Supreme Court warned,

> The government "cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts." First Amendment freedoms are most in danger when the government seeks to control thought or to justify its laws for that impermissible end. The right to think is the beginning of freedom, and speech must be protected from the government because speech is the beginning of thought.[71]

---

65. State's Brief at 8.

66. In its Brief, the State argued that it was appellant's burden to demonstrate that this content-based regulation of speech was unconstitutional, but at oral argument, the prosecutor agreed that strict scrutiny applies and that courts should apply a presumption of invalidity to content-based limitations on speech.

67. *See United States v. Playboy Entm't Grp.,* 529 U.S. 803, 817, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000); refer to text accompanying notes 8–19 *supra.*

68. For the cases relied upon by the State, see note 51 *supra.*

69. State's Post–Submission Brief at 3 (citing *Lo,* 393 S.W.3d at 294–95).

70. *Wooley v. Maynard,* 430 U.S. 705, 714, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (First Amendment protects "freedom of thought").

71. *Free Speech Coalition,* 535 U.S. at 252–53, 122 S.Ct. 1389 (quoting *Stanley v. Georgia,* 394 U.S. 557, 566, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969)). In *Stanley,* the Supreme Court struck down Georgia's law prohibiting the possession of obscenity in the privacy of one's home, explaining,

> If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch. Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds.
>
> And yet, in the face of these traditional notions of individual liberty, Georgia asserts the right to protect the individual's mind from the effects of obscenity. We are not certain that this argument amounts to anything more than the assertion that the State has the right to control the moral content of a person's thoughts.

*Id.* at 565, 89 S.Ct. 1243. *See also Ex parte Nyabwa,* 366 S.W.3d 710, 711–12 (Tex.Crim.

A man's thoughts are his own; he may sit in his armchair and think salacious thoughts, murderous thoughts, discriminatory thoughts, whatever thoughts he chooses, free from the "thought police." [72] It is only when the man gets out of his armchair and acts upon his thoughts that the law may intervene.[73] To protect the right of citizens to think freely and to protect speech for its own sake, the Supreme Court's cases "draw vital distinctions between ... ideas and conduct." [74] Section 33.021(b) prohibits constitutionally protected speech when that speech is coupled with constitutionally protected thought.

The State has a compelling need to protect children from sexual predators, but this statute is not narrowly drawn to achieve only that legitimate goal of prosecuting "sexual predators who attempt to solicit a minor, or a police officer posing as a minor, for unlawful activity when the individual does not show up for the meeting." [75] This particular provision does not speak to an actor soliciting a child, meeting a child, intending to meet a child, or any other predatory conduct. Indeed, it would apply to a Texas defendant who has "titillating talk" with a child in Outer Mongolia or a Mongolian who has salacious communications with a child in Dallas. Instead, this law prohibits all internet communications relating to or describing explicit sexual material by an adult to a minor if that adult speaks with the intent to arouse or gratify sexual desire. But, consistent with the First Amendment, it is conduct designed to induce a minor to commit an illegal sex act with titillating talk that may be proscribed, not the titillating talk itself.[76]

The State suggests that the statute prohibits only one-on-one communications—i.e., the sexual predator who is "grooming" a child with "titillating talk." But the statute is not limited to one-on-one communications; instead it would apply to one who communicates via the internet with one, ten, or a hundred minors, perhaps sending them salacious selections from "Lolita" with the intent to tickle their fan-

App.2012) (Keller, P.J., dissenting to refusal of defendant's PDR) (addressing the purported narrowing of the improper photography statute based on the defendant's intent to arouse or gratify sexual desires; ·"It is not enough to say that the statute is directed only at intent, if the intent consists of thought that is protected by the First Amendment. There are limits to the freedom of thought protected by the First Amendment.... But in the statute before us, the person photographed could be a fully-clothed adult walking down a public street. The breadth of this statute is breathtaking, and the type of intent that it regulates is not inherently exempt from First Amendment protection.").

72. GEORGE ORWELL, 1984 bk. 1, ch. 1 ("The thought police would get him just the same. He had committed—would have committed, even if he had never set pen to paper—the essential crime that contained all others in itself. Thoughtcrime, they called it. Thoughtcrime was not a thing that could be concealed forever. You might dodge success-fully for a while, even for years, but sooner or later they were bound to get you.").

73. See *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 67–68, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973) ("The fantasies of a drug addict are his own and beyond the reach of government, but government regulation of drug sales is not prohibited by the Constitution; stating that regulations aimed at conduct which have only an incidental effect on thought do not violate the First Amendment's freedom of mind mandate.").

74. *Free Speech Coalition*, 535 U.S. at 253, 122 S.Ct. 1389.

75. House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. H.B. 2228, 79th Leg., R.S. (2005).

76. As appellant notes, "One can titillate without trying to consummate." Appellant's Brief at 10.

cy. Furthermore, it would be anomalous to think that a person who makes "titillating talk" to one minor over the internet may be subject to felony prosecution, but that same person who makes "titillating talk" to two or more minors in a chat room or through a mass email is not subject to criminal prosecution. As the Tenth Circuit noted in *ACLU v. Johnson,* such an interpretation "would lead to the absurd result that no violation of the statute would occur if someone sent a message to two minors, or a chat room full of minors, or a minor and an adult." [77]

For the above reasons, we hold that the court of appeals erred in applying an incorrect standard of review and in upholding the constitutionality of Section 33.021(b). We reverse the decision of that court and remand the case to the trial court to dismiss the indictment.

## OPINION ON STATE'S MOTION FOR REHEARING

PER CURIAM.

On original submission, this Court held Section 33.021(b) of the Texas Penal Code facially unconstitutional. The State has filed a motion for rehearing raising three grounds. We deny all three grounds, but write to address solely the State's first ground in which it alleges that the Court erred by finding Penal Code Section 33.021(b) unconstitutional without first providing notice to the attorney general pursuant to Section 402.010 of the Texas Government Code.

77. *ACLU v. Johnson,* 194 F.3d 1149, 1159 (10th Cir.1999) (rejecting government's argument that court could narrow statute criminalizing internet distribution of material harmful to minors by reading it to apply only to one-on-one communications).

Section 402.010, as it pertains to this case, provides:

(a) In an action in which a party to the litigation files a petition, motion, or other pleading challenging the constitutionality of a statute of this state, the court shall, if the attorney general is not a party to or counsel involved in the litigation, serve notice of the constitutional question and a copy of the petition, motion, or other pleading that raises the challenge on the attorney general either by certified or registered mail or electronically to an e-mail address designated by the attorney general for the purposes of this section. Notice under this section must identify the statute in question, state the basis for the challenge, and specify the petition, motion, or other pleading that raises the challenge.

(b) A court may not enter a final judgment holding a statute of this state unconstitutional before the 45th day after the date notice required by Subsection (a) is served on the attorney general.

(c) A court's failure to file or serve notice as required by Subsection (a) does not deprive the court of jurisdiction or forfeit an otherwise timely filed claim or defense based on the challenge to the constitutionality of a statute of this state.

(d) This section or the state's intervention in litigation in response to notice under this section does not constitute a waiver of sovereign immunity.

TEX. GOV'T CODE § 402.010 (Vernon 2011).[1] Subsection (a) is triggered by the filing of

1. This version of Section 402.010 was enacted, as a wholly new provision, effective June 17, 2011. The savings provision contained in the house bill provided that the new section would apply to filings made on or after its effective date. Section 402.010 was amended effective September 1, 2013, to require that a

a "petition, motion, or other pleading." Appellant's petition for discretionary review was filed in this Court on November 7, 2012, well after the effective date of the provision, June 17, 2011.

The State suggests that subsection (b) of Section 402.010 prevents this Court from entering a final judgment in this case because we have not complied with the notice requirement set forth in subsection (a) of 402.010. We hold that both subsections violate the separation-of-powers doctrine of our state constitution.

## I.

 The Texas Constitution includes an express separation-of-powers provision:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. Art. II, § 1. The "single, tersely phrased paragraph, provides that the constitutional division of the government into three departments (Legislative, Executive and Judicial) shall remain intact, 'except in the instances herein expressly permitted.'" *Meshell v. State*, 739 S.W.2d 246, 252 (Tex.Crim.App.1987). This division ensures that power granted one branch may be exercised by only that branch, to the exclusion of the others. "The separation of powers doctrine there-

fore requires that 'any attempt by one department of government to interfere with the powers of another is null and void.'" *Id.* (quoting *Ex parte Giles,* 502 S.W.2d 774, 780 (Tex.Crim.App.1974)). Our state's express provision "reflects a belief on the part of those who drafted and adopted our state constitution that one of the greatest threats to liberty is the accumulation of excessive power in a single branch of government." *Armadillo Bail Bonds v. State,* 802 S.W.2d 237, 239 (Tex. Crim.App.1990); *see also Langever v. Miller,* 124 Tex. 80, 76 S.W.2d 1025, 1035 (1934) ("So important is this division of governmental power that it was provided for in the first section of the first article of the Constitution of the Republic of Texas, and alone it constituted article 2 of each succeeding Constitution.").

We have viewed the Texas provision as generally susceptible to violation in one of two ways:

> (1) when one branch of government assumes or is delegated a power "more properly attached" to another branch, or

> (2) when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers.

*Ex parte Gill,* 413 S.W.3d 425, 431–32 (Tex.Crim.App.2013); *see also Armadillo Bail Bonds,* 802 S.W.2d at 239. Section 402.010 does not concern the assumption or delegation of a power, but rather presents a question of undue interference.

We examined interference by the legislature with the judicial branch in *Armadillo Bail Bonds v. State,* in which we addressed whether a statute barring a trial court from entering a bond-forfeiture judgment until eighteen months after the date

party making such a constitutional challenge file a form with the court "indicating which pleading should be served on the attorney

general[,]" and directing the Office of Court Administration to adopt the form that a party should use for such purposes.

of the forfeiture in a felony case so usurped a judicial function that it violated separation of powers. We began our analysis by examining the nature of judicial power, recognizing that "core judicial power" embraces the power (1) to hear evidence; (2) to decide the issues; (3) to decide the relevant questions of law; (4) to enter a final judgment on the facts and the law; and (5) to execute the final judgment or sentence. *Armadillo Bail Bonds,* 802 S.W.2d at 239–40. Because the provision at issue required the trial court to refrain from exercising a part of its core powers (the power to enter a final judgment) for a period of a year and a half, it unduly interfered with the judiciary's effective exercise of its constitutional powers. In *State v. Matyastik,* 811 S.W.2d 102 (Tex. Crim.App.1991), the Court dealt with a different subsection of the same statute at issue in *Armadillo Bail Bonds,* specifically, the subsection barring a final judgment in a bail-bond forfeiture case until the expiration of nine months after the date of the forfeiture in a misdemeanor case. Applying the reasoning and holding from *Armadillo Bail Bonds,* the Court held that the provision violated separation of powers as well. *Id.* at 104.

## II.

Section 402.010 also contains a provision purporting to suspend a court's power to enter a final judgment. Subsection (b) of 402.010 reads:

> A court may not enter a final judgment holding a statute of this state unconstitutional before the 45th day after the date notice required by Subsection (a) is served on the attorney general.

This provision attempts to suspend a judgment of this Court, or any court, virtually indefinitely, or until forty-five days after notice has been provided to the attorney general in accordance with subsection (a).

██ There are "spheres of activity so fundamental and so necessary to a court, so inherent in its very nature as a court, that to divest it of its absolute command within these spheres is to make meaningless the very phrase judicial power." *Armadillo Bail Bonds,* 802 S.W.2d at 241 (quoting *Coate v. Omholt,* 203 Mont. 488, 662 P.2d 591 (1983)). Requiring that the court refrain from entering a final judgment for a year and a half in a felony case and for nine months in a misdemeanor case, was such a divestiture. *Id.; Matyastik,* 811 S.W.2d at 104. Granted, eighteen-month and nine-month restrictions are considerably longer than a 45–day restriction. But the potential length of the delay is not so much the problem as the fact of the attempted interference at all. Entering a final judgment is a core judicial power; it falls within that realm of judicial proceedings "so vital to the efficient functioning of a court as to be beyond legislative power." *Armadillo Bail Bonds,* 802 S.W.2d at 240. Thus, the 45–day time frame provided for in subsection (b) is a constitutionally intolerable imposition on a court's power to enter a final judgment and a violation of separation of powers.

██ A portion of a legislative enactment, if declared unconstitutional, does not necessarily mean that the entire act is invalid:

> Invalidity of a part [of a legislative enactment] does not destroy the entire act, unless the valid part is so intermingled with all parts of the act so as to make it impossible to separate them, and so as to preclude the presumption that the legislature would have passed the act anyhow.

*Meshell,* 739 S.W.2d at 257 (quoting Tex. Jur.3d). The test is whether the provisions are "essentially and inseparably connected in substance." *Id.* While subsection (b) could be excised without changing the substance of subsection (a), its removal

would render the notice provision unenforceable, particularly given the attorney general's limited role in criminal cases.[2] As a result, Section 402.010 would not make sense without the enforcement mechanism provided for in subsection (b). *See id.* at 257–58 ("provision as a whole is rendered incapable of reasonable use" since legislature would not have passed entire provision without including enforcement mechanism).

2. Absent the consent of a local prosecutor or the request of a district or county attorney for assistance, the attorney general has very limited authority to represent the state in criminal cases in trial courts, and even less in the courts of appeals and this Court. *See Saldano v. State,* 70 S.W.3d 873, 880–81 (Tex.Crim. App.2002) (attorney general has no criminal prosecution authority, but is generally limited to representing the State in civil litigation); *see, e.g.,* Tex. Penal Code § 31.03(j) (with consent of local prosecutor, attorney general has concurrent jurisdiction to prosecute thefts involving state Medicaid program); Tex. Penal Code § 32.32 (with consent of local prosecutor, attorney general has concurrent jurisdiction to prosecute false statements made involving mortgage loans); Tex. Penal Code § 35A.02(f) (with consent of local prosecutor, attorney general has concurrent jurisdiction to prosecute offenses under Chapter 35A, Medicaid Fraud); Tex. Penal Code § 35.04 (attorney general may offer assistance to prosecutor in insurance fraud case and may prosecute or assist in such case on request of prosecutor); Tex. Penal Code § 39.015 (with consent of local prosecutor, attorney general has concurrent jurisdiction to prosecute offenses under Chapter 39, Abuse of Office). Thus, the attorney general is, with a few exceptions in Texas trial courts, not authorized to represent the State in criminal cases.

3. We also note that subsection (a), standing alone, violates separation of powers because it attempts to impose a duty that falls outside of and is unrelated to any judicial functions and powers of this Court.

This Court has jurisdiction over direct appeals in capital cases, petitions for discretionary review, writs of habeas corpus and, in criminal law matters, writs of mandamus, procedendo, prohibition, and certiorari. Tex. Const. Art. V, § 5. We also have certain

## III.

For the reasons stated, we hold that Section 402.010(a) and (b) constitute an unconstitutional violation of separation of powers.[3] We deny the State's motion for rehearing on all grounds.

KELLER, P.J., filed a concurring opinion.

powers and responsibilities to promulgate rules of evidence and rules of appellate procedure for criminal cases. *See Johnson v. State,* 84 S.W.3d 658, 668–69 & n. 25 (Tex.Crim. App.2002) (discussing recent history and scope of Court's authority to promulgate rules of evidence and appellate procedure). Legal proceedings before us involve claims presented by parties, and, depending upon the nature of the proceeding, variously call upon the Court to consider and review evidence, construe and apply laws, hear and decide legal issues, adjudicate rights, and enter final judgments. While the constitutionality of a state statute is frequently challenged by a party and is therefore among the legal issues facing this Court, the attorney general is typically not authorized to represent the State in any proceeding before this Court. *See* fn. 2, *supra.* The state prosecuting attorney has primary authority to represent the State in all proceedings before this Court. *See, e.g., Saldano,* 70 S.W.3d at 877; *Ex parte Taylor,* 36 S.W.3d 883, 887 (Tex.Crim.App.2001); *Aguirre v. State,* 22 S.W.3d 463, 465 (Tex.Crim.App. 1999).

The subsection (a) directive to notify the attorney general of every constitutional challenge to a state statute made by a party imposes a duty that is wholly unrelated to the Court's judicial powers and functions. Pursuant to this unusual provision, the legislature would have this Court exercise a function that is not only non-judicial but would operate solely for the apparent benefit of the attorney general. And to what extent the attorney general would benefit from receiving such a notice is elusive, given that the attorney general has no authority to appear in criminal cases before this Court. Indeed, the legislative history strongly suggests that the drafters of this provision either were unaware of the limited authority of the attorney general in

KELLER, P.J., filed a concurring opinion.

In *Armadillo Bail Bonds v. State,* this Court struck down legislation that delayed the entry of certain judgments by eighteen months.[1] In that case, the length of the delay does not seem to have been particularly relevant to the decision. This Court said:

> If this requirement is, as Armadillo argues, a valid exercise of the Legislature's power over judicial administration, then, as the court of appeals noted, "nothing prevents the legislature from imposing an *interminable* delay in obtaining final judgment." (emphasis added). In other words, if Article 22.16(c)(2) is valid, then the Legislature has the power to render the Judiciary impotent with respect to the entry of final judgments.[2]

There is no suggestion in this language that the length of the delay had any bearing on the statute's unconstitutionality or that a shorter delay would have satisfied the Texas Constitution. I do not think that the constitutionality of the statute in this case depends upon the length of the mandated delay.

In *State v. Condran,* I dissented to the Court's refusal of a petition that claimed a violation of separation of powers.[3] I concluded:

> The lesson drawn from *Meshell,*[4] *Jones [v. State],*[5] and *[State v.] Williams*[6] is that a legislatively imposed deadline for prosecutorial action violates the Separation of Powers Clause if (1) the remedy for failing to meet the deadline seriously disrupts the prosecutor's ability to perform his duties,[7] (2) the deadline cannot be justified as necessary to effectuate a superior constitutional interest,[8] and (3)

criminal cases, or never intended it to apply to criminal cases at all. *Compare* HOUSE COMM. ON JUDICIARY & CIVIL JURISPRUDENCE, BILL ANALYSIS, Tex. H.B. 2425, 82nd Leg., R.S. (2011) (drafters sought to afford attorney general opportunity to "intervene and defend" in cases involving constitutional challenges to state statutes and also stated that the "goal" of the bill was "to improve the attorney general's ability to defend the state and to save the state the cost of an appeal"); STATE AFFAIRS, BILL ANALYSIS, Tex. H.B. 2425, 82nd Leg., R.S. (2011) ("notice would allow the attorney general to be able to have the best opportunity to defend the state, while also saving the state money by avoiding an unnecessary appeal process") *with* fn. 2, *supra.*

Because Section 402.010(a) purports to burden this Court with undertaking a useless and non-judicial act by providing notice which would not further or relate to any of this Court's judicial functions or powers, it unduly interferes with and infringes upon our constitutionally assigned powers. *See Armadillo Bail Bonds,* 802 S.W.2d at 239 (separation of powers provision has "incidental effect of promoting effective government by assigning functions to the branches that are best suited to discharge them"); *cf. Scoggin v.*

*State,* 117 Tex.Crim. 294, 38 S.W.2d 592 (Tex. Crim.App.1931) (statute depriving officers of authority to arrest for speeding violations unless wearing specific uniform did not "legitimately affect the legality or fairness" of the arrest and was unwarranted interference in violation of separation of powers).

1. 802 S.W.2d 237 (Tex.Crim.App.1990).

2. *Id.* at 241 (emphasis in *Armadillo Bail Bonds*).

3. 977 S.W.2d 144, 146 (Tex.Crim.App.1998) (Keller, J., dissenting), *analysis adopted by Ex parte Young,* 213 S.W.3d 327, 331 (Tex.Crim. App.2006).

4. 739 S.W.2d 246 (Tex.Crim.App.1987).

5. 803 S.W.2d 712 (Tex.Crim.App.1991).

6. 938 S.W.2d 456 (Tex.Crim.App.1997).

7. Dismissal with prejudice required by Speedy Trial Act.

8. Release on bond if prosecutor not ready for trial within certain time.

the prosecutor did not contractually submit to the deadline.[9]

I would apply the same lesson to legislatively imposed deadlines regarding the entry of final judgment. In this case, the remedy for failing to meet the deadline seriously disrupts a court's ability to perform its duties: it prevents a court from performing a core judicial function. I see no conflicting constitutional interest, let alone a superior constitutional interest. And there is no suggestion that courts have contractually submitted to the deadline, as is the case, for example, when a prisoner is obtained pursuant to the Interstate Agreement on Detainers.

Furthermore, the notification statute applies not just to this Court, but to all courts. I do not know what burden the statute would place on trial courts and courts of appeals, but, during the last fiscal year, this Court disposed of well over nine thousand matters. Many of the pleadings before our Court claim that a statute violates the constitution. I agree with the Court that subsection (a), which requires courts to serve the Attorney General with notice and a copy of the relevant pleadings in all of these cases, also violates the Texas Constitution because it imposes a duty that falls outside of any judicial function of this Court.

Finally, I point out that this Court makes available on its website a list of the issues upon which discretionary review has been granted. Any challenge to the constitutionality of a statute that is before us by means of a granted petition for discretionary review is, therefore, already easily ascertainable.

I join the judgment of the Court.

---

9. Regarding speedy trial provision of Interstate Agreement on Detainers, the prosecutor submitted to a contract when he obtained prisoner pursuant to the act.