**Affirmed and Opinion filed March 26, 2020.**



**In the**

# Fourteenth Court of Appeals

## NO. 14-18-00534-CR

## EX PARTE KAMILAH A. HAMILTON

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1569096A**

## OPINION

After the Court of Criminal Appeals declared the 2007 version of Penal Code section 21.15(b)(1) facially unconstitutional in 2014, the legislature enacted the current version in 2015.[1] *See* Tex. Penal Code Ann. § 21.15(b)(1). Applicant

---

[1] The 2007 version of subsection (b)(1), declared unconstitutional by *Ex parte Thompson*, 442 S.W.3d 325, 351 (Tex. Crim. App. 2014), provided:

(b) A person commits an offense if the person:

(1) photographs or by videotape or other electronic means records, broadcasts, or transmits a visual image of another at a location that is not a bathroom or private dressing room:

(A) without the other person's consent; and

Kamilah A. Hamilton stands charged by indictment under current section 21.15(b)(1) with the state jail felony offense of invasive visual recording. *See id.* § 21.15(b)(1), (c). Applicant filed a pretrial application for writ of habeas corpus and motion to quash the indictment, arguing that subsection (b)(1) is overbroad under the First Amendment of the United States Constitution. *See* Tex. Code Crim. Proc. Ann. art. 11.08. The trial court denied the requested relief, and applicant appealed. We affirm.

## I.    BACKGROUND

Applicant was indicted under Penal Code section 21.15(b)(1). Section 21.15(b)(1) provides:

> (b) A person commits an offense if, without the other person's consent and with intent to invade the privacy of the other person, the person:
>> (1) photographs or by videotape or other electronic means records, broadcasts, or transmits a visual image of an intimate area of another person if the other person has a reasonable expectation that the intimate area is not subject to public view.

Tex. Penal Code Ann. § 21.15(b)(1). In section 21.15, "intimate area" is defined as "the naked or clothed genitals, pubic area, anus, buttocks, or female breast of a person." *Id.* § 21.15(a)(2). "Female breast" is defined as "any portion of the female breast below the top of the areola." *Id.* § 21.15(a)(1). An offense under section 21.15 is a state jail felony. *Id.* § 21.15(c).

Specifically, applicant was alleged to have on or about October 28, 2017,

---

(B) with intent to arouse or gratify the sexual desire of any person.

Act of May 17, 2001, 77th Leg., R.S., ch. 458, § 1, 2001 Tex. Gen. Laws 893, 893, *amended by* Act of May 28, 2003, 78th Leg., R.S., ch. 500, § 1, 2003 Tex. Gen Laws 1771, 1771, *amended by* Act of May 18, 2007, 80th Leg., R.S., ch. 306, § 1, 2007 Tex. Gen. Laws 582, 582, *amended by* Act of May 30, 2015, 84th Leg., R.S., ch. 955, § 2, 2015 Tex. Gen. Laws 3394, 3394 (current version at Tex. Penal Code § 21.15(b)(1)).

unlawfully, and with the intent to invade the privacy of complainant D.R.A., and without complainant's consent, broadcast a visual image of an intimate area of complainant, namely, the genitals, and complainant had a reasonable expectation of privacy that said intimate area was not subject to public view. *See id.* § 21.15(b)(1).

Applicant filed a pretrial application for writ of habeas corpus; she argued that section 21.15(b)(1) is facially overbroad in violation of the First Amendment. *See* U.S. Const. amend. I. On May 9, 2018, the trial court signed an order denying applicant's request for habeas relief, effectively remanding applicant into custody. *See* Tex. Code Crim. Proc. Ann. art. 11.44. Applicant appeals the sole issue of whether section 21.15(b)(1) is facially overbroad.[2]

## II. ANALYSIS

### A. Standard of review

An applicant may file a pretrial application for writ of habeas corpus in order to raise a facial challenge to the constitutionality of the statute under which the applicant is charged. *Ex parte Thompson*, 442 S.W.3d 325, 333 (Tex. Crim. App. 2014); *see Ex parte Lo*, 424 S.W.3d 10, 13–14 (Tex. Crim. App. 2013). Whether a criminal statute is facially unconstitutional is a question of law subject to de novo review. *Lo*, 424 S.W.3d at 14.

When the constitutionality of a statute is challenged, a court usually presumes that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *Id.* at 14–15; *see* Code Construction Act, Tex. Gov't Code Ann. § 311.021. With respect to constitutional provisions other than the First Amendment, a facial challenge to the constitutionality of a statute will succeed only if it is shown

---

[2] In her pretrial writ application, applicant also raised the argument that section 21.15(b)(1) is unconstitutionally vague. She does not advance this argument on appeal.

that the statute is unconstitutional in all of its applications. *State v. Johnson*, 475 S.W.3d 860, 864 (Tex. Crim. App. 2015) (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 & n.6 (2008)).

However, when the statute suppresses, disadvantages, or imposes differential burdens upon speech based on its content, the usual presumption of constitutionality does not apply. *Lo*, 424 S.W.3d at 15 (citing *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 817 (2000)). Instead, content-based regulations of protected speech are presumptively invalid, and the State bears the burden to rebut that presumption. *Id.* (citing *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 660 (2004)). Courts apply such strict scrutiny in their review of a content-based regulation of speech or expressive conduct. *See, e.g.*, *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226–27, 2231–32 (2015) ("Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."); *Sable Commc'ns of Cal., Inc. v. Fed. Commc'ns Comm'n*, 492 U.S. 115, 126 (1989) ("The Government may, however, regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest."); *Thompson*, 442 S.W.3d at 344, 348–49 ("Under strict scrutiny, a regulation of expression may be upheld only if it is narrowly drawn to serve a compelling government interest." (citing *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 799 (2011))).

To determine which presumption applies, we must determine whether subsection (b)(1) regulates speech or expression based upon its content.

## B. Implication of protected speech or expression

The State urges this court to hold section 21.15(b)(1) regulates conduct that is

not subject to First Amendment protection or scrutiny whatsoever. We decline to do so.

In *Thompson*, the Court of Criminal Appeals addressed a similar contention when it considered the constitutionality of the 2007 section 21.15(b)(1). 442 S.W.3d at 334–37. The court determined that photographs and visual recordings are inherently expressive and further concluded "that a person's purposeful creation of photographs and visual recordings is entitled to the same First Amendment protection as the photographs and visual recordings themselves." *Id.* at 336–37. The court also rejected the State's arguments that the mere presence of intent and consent elements in the former subsection (b)(1) placed it outside the protection of the First Amendment. *Id.* at 337–42. Finally, the court distinguished *Scott v. State*, 322 S.W.3d 662 (Tex. Crim. App. 2010), because the telephone-harassment statute at issue there dealt with communications by telephone and applied to defendants who intended to inflict emotional harm on their victims. *Thompson*, 442 S.W.3d at 342–43. In ultimately concluding that the 2007 subsection (b)(1) implicated the First Amendment on its face, the *Thompson* court "ke[p]t in mind the Supreme Court's admonition that the forms of speech that are exempt from First Amendment protection are limited, and [courts] should not be quick to recognize new categories of unprotected expression." *Id.* at 344; *see United States v. Stevens*, 559 U.S. 460, 468–72 (2010) (historically unprotected categories of speech include speech integral to criminal conduct, obscenity, defamation, fraud, incitement, and child pornography).

The State argues that subsection (b)(1)'s intent-to-invade-privacy element places it beyond any First Amendment protection. However, just because a statute contains an intent element does not eliminate all First Amendment concerns. *Thompson*, 442 S.W.3d at 337. It depends on the specific type of intent. *Id.* The

5

intent element in subsection (b)(1) does not rise to the level of unprotected threats or intimidation. *See id.* at 338 (indicating that intent to threaten or intimidate "might help to eliminate First Amendment concerns"). Nor did the *Thompson* court list intent to invade privacy as an example of entirely unprotected expression. *See id.* at 349 & n.142 (declining to express opinion whether including culpable mental state of intent to "invade the privacy of the other person" would be sufficient on its own to salvage constitutionality of 2007 subsection (b)(1)).

The State relies on *Scott*. However, like the *Thompson* court, we conclude *Scott* is distinguishable. *See Thompson*, 442 S.W.3d at 342–43. In addition, the State cites in support a First Court of Appeals case aligning with *Scott*, *Horhn v. State*, 481 S.W.3d 363 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). But *Horhn* also is distinguishable because the offense at issue there (fraudulent use of identifying information) "requires the specific intent to harm or defraud and requires that the actor 'obtains, possesses, transfers, or uses an item [of] identifying information' with that specific intent." *Id.* at 375; *see Ex parte Harrington*, 499 S.W.3d 142, 147 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) ("The intent required of [fraudulent use of identifying information statute] is similar to the *mens rea* requirement of the harassment statute.").

## C. Content-based restriction

Having concluded that the statute implicates expressive conduct subject to First Amendment protection, we next consider whether the statute imposes restrictions based on content. Generally, a law is considered to be content based if it distinguishes favored speech from disfavored speech on the basis of the ideas or views expressed. *See Thompson*, 442 S.W.3d at 345. In other words, "[i]f it is necessary to look at the content of the speech in question to decide if the speaker violated the law, then the regulation is content-based." *Id.* (citing *Lo*, 424 S.W.3d at

15 n.12 (citing *Gresham v. Peterson*, 225 F.3d 899, 905 (7th Cir. 2000))).

Here, the statute seeks to curtail nonconsensual taking and dissemination of photographs and video recordings of another person's "intimate area," defined as "naked or clothed genitals, pubic area, anus, buttocks, or female breast." Tex. Penal Code Ann. § 21.15(a)(1), (2), (b)(1). It is the sexually-related nature and subject matter of the images sought to be proscribed that renders the statute content based. *See Thompson*, 442 S.W.3d at 348 (former subsection (b)(1) sought to prevent sexual content); *see also Lo*, 424 S.W.3d at 22–24 (discussing First Amendment protection of indecent sexual expression (citing *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 874 (1997)).

## D. Strict scrutiny

Having concluded that section 21.15(b)(1) regulates expressive conduct based on its content, we apply strict scrutiny in our review to determine if the State has overcome the presumption of invalidity. *See Thompson*, 442 S.W.3d at 344 (citing *Entm't Merchs. Ass'n*, 564 U.S. at 799). To satisfy strict scrutiny, a law that regulates expression must be "narrowly drawn to serve a compelling government interest." *Id.* (same). "[A] regulation is 'narrowly drawn' if it uses the least restrictive means of achieving the government interest." *Id.* (citing *Playboy*, 529 U.S. at 813).[3]

---

[3] Applicant does not analyze whether the State met its burden to show that subsection (b)(1) is narrowly drawn to serve a compelling government interest. Instead, applicant only argues that the statute "fails strict scrutiny" and "the inquiry ends" because "the statute restricts a real and substantial amount of protected speech." Applicant contends that the United States Supreme Court essentially has abandoned performing any strict-scrutiny analysis when the speech at issue is subject to any First Amendment protection. We disagree. *See Reed*, 135 S. Ct. at 2231–32 (concluding that "Town has not met its burden to prove that its Sign Code is narrowly tailored to further a compelling government interest"); *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015) ("This is therefore one of the rare cases in which a speech restriction withstands strict scrutiny."); *Entm't Merchs. Ass'n*, 564 U.S. at 799–800 ("Because the Act imposes a restriction on the content of protected speech, it is invalid unless California can demonstrate that it passes strict scrutiny— that is, unless it is justified by a compelling government interest and is narrowly drawn to serve

First, the Court of Criminal Appeals has recognized that "[p]rivacy constitutes a compelling government interest when the privacy interest at stake is substantial and the invasion occurs in an intolerable manner." *Id.* at 348 (citing *Snyder v. Phelps*, 562 U.S. 443, 459 (2011)). A substantial privacy interest is "invaded in an intolerable manner when a person is photographed without consent in a private place, such as the home, or with respect to an area of the person that is not exposed to the general public, such as up a skirt." *Id.* Subsection (b)(1) clearly seeks to protect a person's substantial privacy interest in his or her own personal "intimate areas" "not subject to public view" and punish nonconsensual attempts to capture or transmit photographs or recordings of those private areas of a person. *See* Tex. Penal Code Ann. § 21.15(b)(1). The legislative history of the 2015 amendment of subsection (b)(1) confirms that the legislature was seeking to address substantial violations of privacy, noting "[t]here have been several reports in Texas of individuals who have had invasive and improper photographs taken of them without their consent." *See* Senate Research Center, Bill Analysis, Tex. S.B. 1317, 84th Leg., R.S. (2015).

Second, section 21.15(b)(1) is narrowly drawn. In applying the strict-scrutiny standard to former subsection (b)(1)—and holding that it did not survive strict scrutiny and was unconstitutional on its face in violation of the First Amendment— the *Thompson* court nevertheless provided some limiting guideposts.[4] As an

---

that interest."); *see also Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2374 (2018) (citing *Reed*, 135 S. Ct. at 2228, and discussing Court's application of strict scrutiny to content-based laws seeking to regulate speech in various professional fields).

[4] *See Murray v. State*, 261 S.W.3d 255, 257 (Tex. App.—Houston [14th Dist.] 2008) ("[T]his court still should follow judicial dicta from the Court of Criminal Appeals, inasmuch as these statements constitute deliberate and unequivocal declarations of the law made after mature consideration and for future guidance of the bench and bar."), *aff'd on other grounds*, 302 S.W.3d 874 (Tex. Crim. App. 2009).

example, the *Thompson* court indicated that then-in-effect section 21.15(b)(2) would indeed meet the strict-scrutiny standard:

> One need only look at the next subsection of the statute—§ 21.15(b)(2)—to see an example of a provision that is in fact narrowly drawn to protect substantial privacy interests—the provision that makes it a crime to "photograph or . . . record[ ] . . . a visual image of another at a location that is a bathroom or private dressing room."

442 S.W.3d at 348–49 (alterations in original) (quoting 2007 Tex. Penal Code § 21.15(b)(2)); *see* Act of May 18, 2007, 80th Leg., R.S., ch. 306, § 1, 2007 Tex. Gen. Laws 582, 582, *amended by* Act of May 30, 2015, 84th Leg., R.S., ch. 955, § 2, 2015 Tex. Gen. Laws 3394, 3394 (current version at Tex. Penal Code § 21.15(b)(2)). Likewise, the court described how former subsection (b)(1) could "be narrowed by adding an element that requires that a person's privacy interest be invaded as a result of the place of the person recorded or the manner in which a visual recording is made" or by designating "specific places and manners that are proscribed, such as specifically proscribing the taking of a photograph of a person inside his home or the taking of a photograph underneath a person's clothing." *Thompson*, 442 S.W.3d at 349. Such narrower methods would "reach[] such situations that address more directly the substantial privacy interests at stake." *Id.*

Here, in addition to including a culpable—intentional—mental state to narrow the provision to address substantial privacy concerns, the legislature precisely designated and further limited the application of subsection (b)(1) to specific areas of a person's body both based on "intimate area" location and to situations where a person has a reasonable expectation that such "intimate area is not subject to public view." *See* Tex. Penal Code Ann. § 21.15(b)(1).

Applicant sidesteps the strict-scrutiny discussion in *Thompson*. *See* 442

S.W.3d at 348–49.[5] But we cannot ignore the *Thompson* court's express recognition of the State's compelling interest in curtailing intentional, intolerable invasions of its citizens' substantial privacy interests. *Id.* at 348. Moreover, we find the various "less restrictive" methods and means to narrowly draw a provision seeking to proscribe invasive visual recording as analyzed by the higher court (at the least) persuasive. *Id.* at 348–49.[6] We therefore conclude that subsection (b)(1) meets strict scrutiny.

### E. Not facially overbroad

Applicant argues section 21.15(b)(1) is facially overbroad and fails strict scrutiny[7] because it "restricts a real and substantial amount of protected speech."[8]

---

[5] *See supra* note 3. We note that both the Second and the Eleventh Courts of Appeals essentially have agreed with the *Thompson* court's strict-scrutiny assessment and held that Penal Code section 21.15(b)(2) satisfies strict scrutiny and thus does not violate the First Amendment. *See Ex parte Nunez*, No. 11-18-00156-CR, 2019 WL 2062699, at *2–3 (Tex. App.—Eastland May 9, 2019, pet. ref'd) (mem. op., not designated for publication); *In the Matter of D.Y.*, No. 02-16-00294-CV, 2017 WL 2178877, at *2 (Tex. App.—Fort Worth May 18, 2017, pet. denied) (mem. op.). One case was criminal; the other was a juvenile proceeding. The court of criminal appeals and supreme court, respectively, refused and denied further review.

[6] *See Murray*, 261 S.W.3d at 257.

[7] *See supra* note 3.

[8] Applicant primarily relies on *United States v. Alvarez*, 567 U.S. 709 (2012), and *Stevens* in support. However, the federal criminal statutes at issue in *Alvarez* and *Stevens* are readily distinguishable. In *Stevens*, the Court invalidated a statute under the First Amendment as being substantially overbroad because a substantial number of its applications were unconstitutional, when judged in relation to the statute's permissible applications. 559 U.S. at 473, 481–82. The statute at issue in *Stevens* made it a crime to knowingly create, sell, or possess a depiction of animal cruelty, if done for commercial gain. *Id.* at 464–65. Animal cruelty was broadly defined in the statute to include not only animals that had been intentionally maimed, mutilated, or tortured, but also animals that had been intentionally wounded or killed, thus including depictions of activities that are protected by the First Amendment. *Id.* at 465, 474, 481.

In *Alvarez*, a plurality of the Court similarly concluded that the Stolen Valor Act was substantially overbroad. 567 U.S. at 722–23. "The Act by its plain terms applie[d] to a false statement at any time, in any place, to any person" and sought "to control and suppress all false statements on this one subject [receipt of military decorations or medals] in almost limitless times and settings," such as a personal conversation inside a home, and "without regard for whether the

We disagree.

"According to the First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a 'substantial' amount of protected speech 'judged in relation to the statute's plainly legitimate sweep.'" *Lo*, 424 S.W.3d at 18 (quoting *Virginia v. Hicks*, 439 U.S. 113, 118–19 (2003)). "A statute is likely to be found overbroad if the criminal prohibition it creates is of 'alarming breadth.'" *Thompson*, 442 S.W.3d at 350 (quoting *Stevens*, 559 U.S. at 474). The overbreadth doctrine is "strong medicine" to be employed only as a last resort. *Id.* at 349 (citing *New York v. Ferber*, 458 U.S. 747, 769 (1982)).

After it determined that the former version of section 21.15(b)(1) was an invalid content-based restriction, the *Thompson* court also addressed overbreadth. *Id.* at 349–51. The court assumed that some applications of the former subsection (b)(1) would be legitimate, *i.e.*, situations when photographs were "taken of an area of a person's body that is not exposed to the public, such as when a photograph is taken up a woman's skirt." *Id.* at 349. Nevertheless, the court concluded the former statute was "extremely broad" and there was a "real danger" of prosecutions involving purely public photographs of public parts of people in public places. *Id.* at 350–51.

In contrast, we already have determined that the current subsection (b)(1) is narrowly drawn to meet a compelling state interest in protecting against the invasion of substantial privacy interests. It proscribes conduct involving photographing, recording, broadcasting, or transmitting a visual image of another person's "intimate area"—only when it is done "without the other person's consent and with intent to invade the privacy of the other person" and "if the other person has a reasonable

lie was made for the purpose of material gain." *Id.* at 722–23.

11

expectation that the intimate area is not subject to public view." Tex. Penal Code Ann. § 21.15(b)(1).

These limitations help guard against unrestrained, unconstitutional prosecutions. There is no indication that an individual will be chilled from exercising his or her First Amendment rights to engage in visual sexual expression in most situations—as long as the "intimate areas" of the subject are in public view or the subject has no reasonable expectation that his or her "intimate areas" are not subject to public view, the individual does not intend to invade the subject's privacy, or the subject consents to having his or her "intimate areas" captured or recorded. *See State v. Stubbs*, 502 S.W.3d 218, 235 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) ("Merely imagining some possible unconstitutional applications does not suffice to demonstrate a realistic danger that in fact the statute will be overbroadly applied."). Indeed, the only appellate decisions of which we are aware involve legitimate applications of the current subsection (b)(1) to defendants taking "upskirt" photographs or videos of complainants' "intimate areas" without their consent while they were shopping.[9] *Cf. Thompson*, 442 S.W.3d at 350–51 & n.154 (noting at least four appellate decisions when cases involved application of former subsection (b)(1) to protected "purely public photography"). Unlike the former subsection (b)(1), we conclude there is no "realistic" danger that the current statute will be unconstitutionally applied. *See id.* at 350.

We therefore hold that section 21.15(b)(1) satisfies strict scrutiny, is not facially overbroad, and does not violate the First Amendment. Accordingly, the trial

---

[9] *See Aguilar v. State*, No. 14-18-00321-CR, 2019 WL 3121823, at *1–2 (Tex. App.—Houston [14th Dist.] July 16, 2019, no pet.) (mem. op., not designated for publication); *Ex parte Faust*, No. 09-18-00462-CR, 2019 WL 1549037, at *1 (Tex. App.—Beaumont Apr. 10, 2019, no pet.) (mem. op., not designated for publication); *Vazquez v. State*, No. 05-16-01122-CR, 2017 WL 1710583, at *1 (Tex. App.—Dallas May 3, 2017, no pet.) (mem. op., not designated for publication).

court did not err in denying applicant's request for habeas relief.

We overrule applicant's sole issue on appeal.

### III.  CONCLUSION

We therefore affirm the trial court's order denying relief on application for writ of habeas corpus and motion to quash the indictment. *See* Tex. R. App. P. 31.3.


/s/     Charles A. Spain
Justice


Panel consists of Justices Christopher, Spain, and Poissant.

Publish—Tex. R. App. P. 47.2(b).