

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-96,658-01

### EX PARTE ERIC TODD WILLIAMS, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 2012CR10649-W1 IN THE 379TH DISTRICT COURT
### BEXAR COUNTY

**SCHENCK, P.J., filed a dissenting opinion in which YEARY, J., joined.**

## O P I N I O N

Our habeas Applicant, Eric Todd Williams, took and sent a photograph of his genitals to someone known to him as a fourteen-year-old girl with the intent of sexually gratifying himself or her in violation of Texas Penal Code § 33.021(b). He is right in noting that this Court held the statute to be facially unconstitutional in *Ex parte Lo*—despite its proper application to him—under the U.S. Supreme Court's substantial overbreadth doctrine. 424 S.W.3d 10, 19 (Tex. Crim. App. 2013). Barring reconsideration, the majority is right in treating *Lo* as binding on the

constitutional question, if not its availability in this setting. I further assume that *Lo* was right in treating the doctrine of substantial overbreadth as available under existing U.S. Supreme Court precedent interpreting the U.S. Constitution's First and Fourteenth Amendments. Beyond that, I disagree with everything that is transpiring here.

No one seems to doubt that Messrs. Lo and Williams have no First Amendment right to sexualize children or use them for their sexual gratification. Even as among adults, the "speech" activity involved here would lie at "the outer perimeters of the First Amendment," if at all. *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566 (1991); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975). The question is whether, as *Lo* held, the proscription of it in Texas Penal Code § 33.021(b) was so substantially overbroad as to compel its invalidation under the First Amendment. I believe *Lo* was wrong to answer "yes" to that question at the time it was decided, and that further development of federal First Amendment jurisprudence only reinforces that conclusion. Indeed, I believe *Lo*'s holding has been fatally undermined by the U.S. Supreme Court's recent overbreadth decision in *United States v. Hansen*, 599 U.S. 762 (2023), and other like holdings re-affirming the states' rights to regulate speech, such as that reached by former Penal Code § 33.021(b)'s proscription on communications aimed at children for the purpose of sexual gratification. *E.g.*, *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 468 n.2

(2025) (gathering authorities confirming states' heightened authority to proscribe speech directed at minors).

I further question whether the substantial overbreadth doctrine would apply in this setting and join Judge Yeary in his doubting the continuing availability of *Lo* on collateral review in the absence of presentation and preservation of the issue at trial and direct appeal.

Therefore, I dissent.

## BACKGROUND

On July 10, 2012, Applicant engaged in a chat with an undercover investigator posing as a fourteen-year-old girl in a Yahoo Messenger public chat room designated for romance and narrowed by its location in Texas. After being advised of her age, Applicant initiated sexually explicit language and sent her nude photos of himself. On March 6, 2013, Applicant was convicted of online solicitation of a minor under Section 33.021(b) of the Texas Penal Code and sentenced to three years' imprisonment. Approximately eight months after his conviction, on October 30, 2013, this Court issued its opinion in *Ex parte Lo*. Applicant filed an application for a writ of habeas corpus on April 4, 2025, nearly ten years after his sentence discharged, arguing he suffered collateral consequences as a result of his conviction.

I.    WILLIAMS HAS NO VIABLE FIRST AMENDMENT COMPLAINT

A.    **Ex parte Lo** *Relied on Federal First Amendment Caselaw and Erred in its Application of It*

To reach its determination in *Lo*, the Court relied exclusively on federal First Amendment overbreadth caselaw. *Ex parte Lo*, 424 S.W.3d at 18–19. Under a typical facial attack, an applicant must show "that *no set of circumstances exists* under which [the challenged law] would be valid, . . . or that the statute lacks any 'plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 472 (2010) (emphasis added). However, to succeed on a facial overbreadth challenge, the applicant need only show "a *substantial number* of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* at 473 (emphasis added) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n. 6 (2008)). Thus, the overbreadth doctrine operates more so as an exception to standing rules than as a substantive prohibition on state authority to regulate conduct or speech. *See Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484 (1989). For that reason, overbreadth attacks are subject to a series of restrictions and limitations on their application that appear to have gone unmentioned in our *Lo* opinion.

First, skipping over the question of Mr. Lo's ability to raise the overbreadth challenge,[1] the Court held that Section 32.021(b) was content-based, not entitled to a presumption of validity and, though supported by a compelling interest in protecting children from targeting by adults seeking sexual gratification, not narrowly drawn to achieve that goal. *Ex parte Lo*, 424 S.W.3d at 19. It cited several reasons for that determination, though none would seem sufficient to have warranted imposing the "strong medicine" of substantial overbreadth that is to be used "sparingly and only as a last resort" to permit those like Mr. Lo to pursue that argument as to a penal statute that properly applied to him. *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988).

While this aspect of *Lo*'s holding is perhaps its least problematic, narrow tailoring does not demand perfect tailoring. *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 454 (2015) (citing *Burson v. Freeman*, 504 U.S. 191, 209 (1992)). One would assume that, having limited the statute's reach to (1) adults, (2) who are deliberately targeting recipients known or believed to be children, (3) for the express purpose of

---

[1] As the Supreme Court explained in *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 485–86 (1989), courts should resolve the question whether the statute can be applied constitutionally to the litigant before moving on to the overbreadth question. *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 11 (1988); *see generally Hill v. Colorado*, 530 U.S. 703 (2000). Because Lo was charged with conduct far less extreme and far closer to the imaginative musings more akin to the possible book bans cited in that opinion, he may have prevailed on that attack—as would any third party subject to these potential extreme applications. Separately, I question whether this standing exception is so integral to the substantive First Amendment free speech guarantee as to apply to the states through the Fourteenth.

sexual gratification, the statute would have been sufficiently narrow given the compelling interest involved, particularly where the claims of overbreadth in its potential application to third parties not before the court are the only grounds of attack.

Indeed, many airplane passengers might be prone to pranks and jokes about explosive devices in their carry-on luggage. Still, a statute prohibiting that speech on the basis of such content cannot be seriously questioned by a speaker deliberately invoking a panic on account of the right of other passengers to tell jokes or repeat the story lines of great works of fiction involving the same theme.[2] That the defendant-passenger intended to communicate a message of panic is enough to answer both the content and the overbreadth attack. The same is true of adults targeting children for sexualization.

Moving forward with its mixed content-overbreadth analysis, the *Lo* Court reasoned that the statute was not narrowly tailored (and apparently was overly broad) because the State's interest was already served in other sections of the Penal Code

---

[2] The *Lo* court observed that not only pornography, obscenity, and perverted self-photography, but also works of popular fiction with mature themes might be swept within the statute's reach. *Ex parte Lo*, 424 S.W.3d 10, 19–20 (Tex. Crim. App. 2013). As detailed below, invocation of the doctrine of *substantial* overbreadth requires proof that the statute is likely to substantially chill protected speech. *United States v. Williams*, 553 U.S. 285, 292–93 (2008). *Lo* cites no evidence of adults sexually gratifying themselves by sending copies of *Good Housekeeping* to recipients they know or believe to be children. Neither did it attempt to explain how such a transmission *for that purpose* would amount to protected speech any more than a comment about an explosive would.

that required additional contact or actions toward the corruption or sexual assault of a child. *Ex parte Lo*, 424 S.W.3d at 19–20. At best, this observation would relate to a possible Fifth Amendment double jeopardy concern on account of multiple punishments for the same conduct.

Next, the Court pointed to what it strangely saw as a *weakness* in the statutory scheme; its limited application to one-on-one communications, which it declared as "lead[ing] to [an] absurd result" because no violation would occur if a person communicated with multiple minors. *Id.* at 26–27. This supposed drafting weakness would not be relevant to the First Amendment overbreadth inquiry[3] and suggests a lack of appropriate deference to the role of the Legislature in drafting laws for, among other reasons, avoiding or mitigating possible constitutional concerns. Having initially imagined a reading of the statute that created the constitutional concern, the Court then pivoted, urging that the statute did not clearly limit its reach to one-on-one communications, thereby ignoring the Court's obligation to embrace a limiting construction of a law when doing so would save it from possible

---

[3] While the notion of under-inclusiveness may weigh into the inquiry as to whether a content-based law is in fact aimed at redressing a compelling interest, that inquiry is distinct from the notion of overbreadth, which operates on the premise that the statute applies properly in some settings and not in others. And, even in that setting, the state is not required to target and punish all speech activity so long as its prohibition is targeted incrementally to conduct well within its stated interest. *See generally Williams-Yulee v. Fla. Bar*, 575 U.S. 433 (2015). The answer in the overbreadth context would be clear under the presumption of constitutionality and, to the extent we question its scope of application, our obligation to read the statute to avoid constitutional infirmity. *See United States v. Hansen*, 599 U.S. 762, 770–71, 781 (2023) (applying the rationale that any plausible reading of statute to avoid overbreadth must be favored).

constitutional invalidation. *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973); *see Hansen*, 599 U.S. at 781. Regardless of the Court's treatment of the statute's reach, this observation is ultimately irrelevant to the core question of whether the law is within the government's constitutional power or its right to target and eliminate the source of the "evil" it seeks to remedy. *See Barnes*, 501 U.S. at 567; *Frisby v. Schultz*, 487 U.S. 474, 485 (1988).

The State's target here—adults using children for sexual purposes—would be adequate to defend its reach, regardless of whether the perpetrator is engaged with a child in-person or in *Barnes* "speech-activity" over the internet. The State is well within its power to proscribe the sexualizing activity regardless of whether the perpetrator is using a singular "child" or multiple "children." Likewise, the fact that the sexual abuse of the child or children happens over the internet is irrelevant. If the man in a trench coat has no right to flash the whole school bus, why would Mr. Williams have the right to bombard a whole chat room with his amateur photography?

And, most critically to *Lo*'s core overbreadth holding, what other adult would be restrained in their speech by a law prohibiting this targeting for this purpose? The *Lo* opinion surmises possible applications of the statute to a variety of popular film and literary subjects, implying it could operate as a book ban or proscribe an adult sending an electronic copy of a then-popularized Miley Cyrus music video. *Ex parte*

*Lo*, 424 S.W.3d at 17. But the textual elements foreclose those applications and nothing in the opinion even attempts to explain how the application to anyone but those targeting children for sexual arousal would be possible, much less likely, so as to support its substantial overbreadth conclusion. *Broadrick*, 413 U.S. at 615. To support invalidation on this basis, "overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."

This critical aspect of *Lo* was firmly rejected in *Hansen*. There, the Supreme Court confronted a federal law making a crime of the act of "encourag[ing] or induc[ing] an alien to come to, enter, or reside in the United States." *Hansen*, 599 U.S. at 767. Had the law been enacted by the Texas Legislature, our decision in *Lo* would have doomed it in view of its potential application to all manner of innocent speech. Instead, the Supreme Court rejected the notion that the words "encourage or induce" should be read to have the ordinary meaning; rather, the phrase was to be read as a criminal law term of art, so as to limit its reach into more potentially problematic settings. *Id.* at 774.

### B. Regardless of the Standard it Applied, Lo Misapplied the Substantial Overbreadth Rules of its Day and Clearly Fails Under Current Law

The critical point here is that facial overbreadth challenges are "an exception to the general rule that a person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may be unconstitutionally applied to others." *Massachusetts v. Oakes*, 491 U.S. 576, 581 (1989). The doctrine allows

a litigant "to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392–93 (1988) (cleaned up). As noted, the doctrine should not be employed in advance of an as-applied challenge to Section 32.021(b). *E.g.*, *Stevens*, 559 U.S. at 484 (Alito, J., dissenting) ("The 'strong medicine' of overbreadth invalidation need not and generally should not be administered when the statute under attack is unconstitutional as applied to the challenger before the court.").

But whatever *Lo*'s weaknesses may have been at the time of its decision, they have only grown in the passing years. Under modern federal substantial overbreadth jurisprudence, "[i]nvalidation for overbreadth is strong medicine that is not to be casually employed." *Hansen*, 599 U.S. at 770 (cleaned up). *Hansen* makes that point most clearly—and most fatally—with respect to our concerns in *Lo* about the prospect of inane prosecution. The Court in *Hansen* tackled the same sort of imaginings of the statute to activities said to support the notion that its legitimate reach (here to Mr. William's conduct in sharing his image of his genitalia with a person known to him as a child) to the myriad of protected activities that might be within its scope. While it is easy to imagine all sorts of speech "encouraging" illegal immigration activities to give rise to potential prosecution, Hansen, like Mr. Lo or

Mr. Williams, "fail[ed] to identify a single prosecution for ostensibly protected expression in the seventy years since Congress enacted clause (iv)'s immediate predecessor. Instead, he offers a string of hypotheticals, all premised on the expansive ordinary meanings of 'encourage' and 'induce.'" *Id.* at 782.

Our *Lo* opinion erred in resorting to the same sort of hypotheticals of the *possibility* of prosecutions unconnected to evidence—required by the statutory text we invalidated—of the intent to use the child for sexual gratification. Today, as before, there is no evidence that any Texan has been prosecuted for sharing a book or a Miley Cyrus video or otherwise communicating with a child *other than as part of an effort to sexualize him or her.* The case before us serves as exhibit A. Meanwhile, the government's interest in protecting minors from adult sexual entreaties has been recognized as sufficient to warrant incidental limitations on adult speech activities to a degree far beyond the understanding of *Lo*. *Paxton*, 606 U.S. at 492–93. Because the statute at issue in *Lo* was targeted only at communications directed at minors and for sexual purposes, that speech would be unprotected and subject to near plenary restraint. *Id.* at 471–72.[4] I therefore believe that *Lo*'s holding should be reconsidered regardless of its fidelity to the jurisprudence of its time.

---

[4] This is not my only concern with our disposition in *Lo*. We also, on denial of rehearing, declared that the Legislature violated the separation of powers provision in Article II, § 1 of the Texas Constitution by demanding that the State have an opportunity to be heard by counsel of its choice (the Texas Attorney General) prior to entering final judgment declaring a statute unconstitutional. *See Ex parte Lo*, 424 S.W.3d at 29. I do not believe it was necessary to make that decision in *Lo* and would have simply allowed the State to file an out of time brief. In all

For all these reasons, I would find *Lo* wrongly decided and unavailable to Applicant in this proceeding.

## II. FIRST AMENDMENT OVERBREADTH AS IT APPLIES TO THE STATES SHOULD NOT EXTEND TO AN APPLICANT WHO HAS NO VIABLE FIRST AMENDMENT COMPLAINT

I agree that the "First Amendment, of course, is applicable to the States through the Fourteenth Amendment." *Bigelow v. Virginia*, 421 U.S. 809, 811 (1975). Indeed, "all fundamental rights comprised within the term liberty are protected by the federal Constitution from invasion by the states." *Whitney v. California*, 274 U.S. 357, 373 (1927) (Brandeis, J., concurring). And, the "right of free speech, the right to teach and the right of assembly are, of course, fundamental rights." *Id.* Its fundamental nature is supported by various historic rationales and is beyond doubt.

Still, I see none of this as supporting the modern sexual predator's claimed right to litigate on behalf of others, whether he seeks to gratify himself (or children) via the internet or by a live performance. That exception to standing rules may not be a "right" at all and may not be tethered to the First Amendment to a degree to compel its application to the states.

---

events, I would not see that legislation or like legislation impinging on our authority insofar as it requires notice to the state and some form of opportunity to be heard prior to issuance of a mandate declaring a state law to be unconstitutional.

The U.S. Supreme Court has "repeatedly recognized the governmental interest in protecting children from harmful materials." *Reno v. Am. Civ. Liberties Union*, 521 U.S. 844, 875 (1997). Texas, along with many other states in this nation, have enacted various statutes and ordinances intended to protect the health and morals of children and they are well within the federal constitutional limits on state power. *See Paxton*, 606 U.S. at 492–93; 113 AM. JUR. 3D *Proof of Facts* § 111 (2010).

As our opinion in *Lo* noted, the U.S. Supreme Court decisions in *Ashcroft v. A.C.L.U.*,[5] *Ashcroft v. Free Speech Coalition*,[6] *and Reno v. A.C.L.U.*[7] appeared more favorable to Mr. Lo's position than holdings in other cases like *Ginsberg v. New York*[8] and—I would now add—*Paxton*.[9] The reason for this may be that the statutes involved in these cases were drafted by different sovereigns with different roles with respect to criminal law and the responsibility of protecting youth from corruption at the hands of adults. Nothing in Article I of the U.S. Constitution reaches into this realm, at least not directly. Meanwhile, the First Amendment literally begins with three words—"*Congress shall make no law*"—that presents a fairly negative pall

---

[5] 542 U.S. 656 (2004).

[6] 535 U.S. 234 (2002).

[7] 521 U.S. 844 (1997).

[8] 390 U.S. 629 (1968).

[9] 606 U.S. 461 (2025).

over that body's efforts to regulate in this arena. U.S. CONST. amend I (emphasis added). In contrast, the First Amendment's application to the states comes by way of the Fourteenth Amendment's Due Process Clause and the holding in *Gitlow v. New York*, 268 US 652 (1925), and has a natural tension with the last two amendments in the same Bill of Rights that collectively assign all other powers to the states and the people, respectively. While I have no doubt that the right to speak freely, to criticize the government and officials, to read and observe what one chooses is so fundamental and "implicit in the concept of ordered liberty" as to be fairly expected by those ratifying the Fourteenth Amendment to fall within the reach of their understanding of "due process," I question whether a criminal defendant's right to litigate on behalf of others under the overbreadth doctrine when he has no valid First Amendment complaint of his own necessarily comes along for the ride. Indeed, I doubt that anyone associated with the drafting or ratification of the Fourteenth Amendment would have expected a state criminal defendant to whom a penal statute could constitutionally apply would be empowered to mount a defense on account of the law's potential application to others.

I recognize that U.S. Supreme Court decisions have regularly applied overbreadth in the context of criminal statutes, albeit rarely if ever explicitly addressing the incorporation question I raise to the point where I feel compelled to accept its application here. *See State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997). I also

recognize that others, including Justices Jackson, Harlan, and Chief Justice Rehnquist, have all raised similar questions in the past, and recognize that "this view has never been accepted by any majority of [the] Court." *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 780 n.16 (1978); *see Beauharnais v. Illinois*, 343 U.S. 250, 287–95 (1952) (Jackson, J., dissenting). Still, I believe in this setting the issue is worthy of further consideration by the Supreme Court and have the comfort of good company in all events.

## CONCLUSION

Accordingly, I disagree with the Court's decision to grant Applicant relief in this case and would have denied the application for a writ of habeas corpus.

Filed: October 23, 2025

Publish